UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| VISIONARY IMAGING LLC, ) | Case No. 08-44581-659 |
| ) | Judge Kathy A. Surratt-States |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| A. THOMAS DEWOSKIN, Chapter 7 Trustee, ) | **Adversary No. 09-4220-659** |
| ) | |
| ) | PUBLISHED |
| Plaintiff, ) | |
| ) | |
| -v- ) | |
| ) | |
| IMAGING ADVANTAGE LLC, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter before the Court is Chapter 7 Trustee A. Thomas Dewoskin's Complaint to Avoid and Recover Transfers, Defendant Imaging Advantage LLC's Answer to Plaintiff's Complaint, Plaintiff's Motion for Summary Judgment, Plaintiff's Memorandum in Support of Summary Judgment, Defendant's Motion for Summary Judgment, Defendant's Memorandum in Support of Motion for Summary Judgment, Joint Stipulation of Uncontested Facts, Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, and Plaintiff's Opposition to Defendant's Motion for Summary Judgment. The matter was taken as submitted. Upon consideration of the record as a whole, the Court resolves the matter as follows.

## FINDINGS OF FACT

On June 23, 2008, an Involuntary Petition under Chapter 7 of the Bankruptcy Code was commenced against Debtor Visionary Imaging, LLC (hereinafter "Debtor"). An Order for Relief was entered on August 19, 2008. A. Thomas DeWoskin was the duly appointed Chapter 7 Trustee

(hereinafter "Trustee"). On October 6, 2009, Trustee filed Complaint to Avoid and Recover Transfers in the amount of $233,376.86 that Debtor made to Defendant Imaging Advantage LLC (hereinafter "Defendant") during the 90-day period proceeding Debtor's bankruptcy case (hereinafter "Preference Period").

Debtor provided radiology physicians to community hospitals pursuant to agreements negotiated separately with each hospital. Joint Stipulation of Uncontested Facts (hereinafter "Joint Stip. of Facts") ¶ 5. The radiology physicians would perform services within the contracted hospitals. Payment for the radiology services performed by the radiology physicians would be made by either the hospitals, medicare, medicaid or an insurance company (hereinafter collectively "Service Compensators").

Debtor employed a separate entity, Western Physicians Data Service, Inc. (hereinafter "Western Physicians") to receive and process its payments from Service Compensators and to pay Debtor's liabilities. Joint Stip. of Facts ¶ 6. Thus, payment from the Service Compensators to Debtor was directed to Western Physicians, and thereafter Western Physicians would compensate the radiology physicians on behalf of Debtor. Joint Stip. of Facts ¶ 6.

Debtor and Western Physicians shared office space. Joint Stip. of Facts ¶ 7. Thomas R. Frenz was the founding member and managing member of Debtor. Joint Stip. of Facts ¶ 4. Mr. Frenz also controlled Western Physicians. Joint Stip. of Facts ¶ 7. Christine Frenz, wife of Mr. Frenz, is the majority owner of Western Physicians. Joint Stip. of Facts ¶ 7.

Most of Debtor's operations were also outsourced to Western Physicians. Joint Stip. of Facts ¶ 9. For example, Mary Walsh acted as both office manager of Western Physicians and accountant for Debtor. Joint Stip. of Facts ¶ 9. Mary Walsh prepared checks to pay Debtor's vendors and creditors, including checks to Defendant. Joint Stip. of Facts ¶ 9; Frenz Dep. 68:24 - 25; 105:2 - 25, August 27, 2010. Mr. Frenz decided which of Debtor's vendors and creditors would be paid and in

what amount, and upon his approval, either Mary Walsh or Mr. Frenz would sign the checks on behalf of Debtor. Joint Stip. of Facts ¶ 9.

Defendant was also a client of Western Physicians. Joint Stip. of Facts ¶ 12. Mr. Frenz is now a consultant to Defendant and has held this position since approximately 60 days after Debtor's bankruptcy case was commenced. Joint Stip. of Facts ¶ 12. Like Debtor, Defendant provides radiology physicians to community hospitals. Joint Stip. of Facts ¶ 10. In March 2008, Defendant began to provide services to four community hospitals which were formerly serviced by Debtor. Joint Stip. of Fact ¶ 11. At that time, Debtor was still owed payment for some services it performed. Joint Stip. of Facts ¶ 13. During this transition period, the Service Compensators remitted single payments to Western Physicians on behalf of Debtor for services performed partly by Debtor and partly by Defendant (hereinafter referred to as "Joint Payments"). Joint Stip. of Facts ¶ 13. Service Compensators also remitted funds to Western Physicians on behalf of Debtor which were in fact owed to Defendant for services rendered solely by Defendant (hereinafter referred to as "Misallocated Payments"). Joint Stip. of Facts ¶ 13. The Joint Payments and Misallocated Payments were either physically or electronically deposited into various bank accounts held by Debtor at Champion Bank, Midwest Bank, Reliance Bank and Bank of America. Joint Stip. of Facts ¶¶ 13-14. Western Physicians did not segregate Defendant's portion of the Joint Payments or the Misallocated Payments from Debtor's general bank accounts. Joint Stip. of Facts ¶ 16. Western Physicians did not ensure that the remaining balance of Debtor's various bank accounts was sufficient to satisfy Defendant's portion of Joint Payments and Misallocated Payments. Pl. Motion S. J. ¶ 14; Frenz Dep. 79:8 - 80:16.

During the Preference Period, $233,376.86 (hereinafter collectively "Transfers") was paid to Defendant on Debtor's behalf by Western Physicians. Joint Stip. of Facts ¶ 17. Trustee's Exhibit 2 is a deposit history which details all Joint Payment and Misallocated Payment checks or deposits collected from the Service Compensators from June 2, 2008 through November 19, 2008 and how

3

those funds were apportioned between Debtor and Defendant. Also submitted was a copy of the checks paid to the order of Defendant on behalf of Debtor during the Preference Period. Trustee's Exhibit 2. No accounting has been presented which details precisely what services were performed by Debtor versus Defendant and thus what portion of the Joint Payments were earned by Debtor versus Defendant.[1] Similarly, no accounting has been presented that details how the amounts paid to Defendant correspond with the services provided solely by Defendant for which payment was sent to Debtor. No contract which dictates the terms of when and how Debtor was to pay Defendant was presented to this Court.[2] Defendant states that pursuant to an agreement between Debtor and Defendant, Debtor was to pay Defendant the amount attributable for services provided by Defendant upon Debtor's receipt of the Joint Payments and Misallocated Payments. Pl. Motion S. J. ¶ 13.

There is no dispute that the Transfers were made to Defendant and that the Transfers were made while Debtor was insolvent. There is also no dispute that Defendant received more than it would have received if the Transfers had not been made.

Trustee argues that when Debtor received the funds which belonged to Defendant, Debtor had control over the funds, and thus, Debtor had an interest in the funds. Trustee argues that when Debtor received the Joint Payments and the Misallocated Payments from the Service Compensators, a debtor-creditor relationship was created between Debtor and Defendant. As such, since the Transfers were made to Defendant while Debtor was insolvent, Trustee argues that the Transfers are avoidable by Trustee.

---

[1] Mr. Frenz makes reference to the existence of "reconciliation documents" which detail the amounts that were due to Defendant by Debtor, however no such documents were submitted to the Court. See Defendant's Response to Plaintiff's First Request for Documents to Imaging Advantage LLC No. 2, 13 and 14; Frenz Dep. 47:1- 48:7.

[2] Mr. Frenz makes reference to an agreement between Debtor and Defendant date July 1, 2008 which purportedly contains the above mentioned information. See Defendant's Response to Plaintiff's First Request for Documents to Imaging Advantage LLC No. 1 and 9. No such instrument was presented to this Court. Mr. Frenz also makes reference to certain payments by certain Service Compensators being deposited into specified accounts, Frenz Dep. 14:8- 25; 46: 6-20, however the deposit history demonstrates that Western Physicians' practice did not follow any such routine.

Defendant argues that the Transfers were earmarked for Defendant before Debtor received them, and therefore, Debtor never had an interest in the funds. Further, Defendant argues that the funds were held by a third party and therefore, Debtor never controlled the funds. As such, the threshold requirement of a preference – that the preferential transfer be of an interest of the debtor in property – cannot be satisfied. Therefore, Defendant argues that because the funds were earmarked, the Transfers were not made in satisfaction of an antecedent debt which is required under Section 547(b). Both parties filed their respective motions for summary judgment.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 151, 157, and 1334 (2009) and Local Rule 81-9.01 of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (E) and (F) (2009). Venue is proper in this District under 28 U.S.C. § 1409(a) (2009).

## CONCLUSIONS OF LAW

The Court is presented with Cross-Motions for Summary Judgment. Under Rule 56(c) of the Federal Rules of Civil Procedure, as made applicable under Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed. 2d. 265, 273 (1986). The moving party has the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Id.* at 323. Once the movant carries its burden, the burden shifts to the non-movant. *Id.* In ruling on a motion for summary judgment, a court must view all facts in a light most favorable to the non-moving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan,* 864 F.2d 622, 624 (8th Cir. 1989)(citing *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1224-25 (8th Cir. 1983)).

5

The principal dispute is whether the threshold requirement that the preferential transfer be of an interest in property of Debtor is met, and as such, whether the Transfers were on account of an antecedent debt. Under Section 547, a trustee may avoid any transfer of an interest of the debtor in property –

> (b)(1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if –
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
> ...
> (f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.
>
> (g) For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section....

11 U.S.C. § 547(b), (f) and (g) (2009).

Thus, Section 547(b) begins with a threshold requirement that there must be a transfer of an interest of the debtor in property in order for the transfer to be an avoidable preference. *Id.* The trustee bears the burden of proving the elements of avoiding a preference under Section 547(b). 11 U.S.C. § 547(b) (2009); *Stingley v. AlliedSignal, Inc., (In re Libby Intern., Inc.),* 247 B.R. 463, 466 (B.A.P. 8th Cir. 2000) (citing *Nordberg v. Arab Banking Corp. (In re Chase & Sandborn Corp.),* 904 F.2d 588, 595 (11th Cir. 1990)). Each element must be proven by a preponderance of the evidence. *In re Libby Intern., Inc.,* 247 B.R. at 466 (citing *Pembroke Dev. Corp. v. Commonwealth Sav. & Loan Ass'n (In re Pembroke Dev. Corp.),* 124 B.R. 398, 401 (Bank. S.D. Fla. 1991)).

The Bankruptcy Code does not define 'property of the debtor.' The Supreme Court has indicated that "'property of the debtor' subject to the preferential transfer provision is best understood as property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. I.R.S.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46, 56 (1990)(emphasis in original). For example, a debtor has no interest in property that it holds in trust for another, or in which it has no legal or equitable interest. *Id.*

Defendant argues that Defendant's portion of the Joint Payments and the Misallocated Payments were earmarked for Defendant and thus, Debtor never had an interest in the Transfers. As such, the Transfers were not for or on account of an antecedent debt owed by Debtor because Defendant was not a creditor of Debtor. Rather, Debtor acted as a bailee-of-sorts and held funds that were earned and destined for Defendant. Defendant further argues that the earmarking doctrine applies here because the Transfers were entrusted to a third-party, Western Physicians, and thus the Transfers were never in Debtor's actual possession. Further, Defendant states that it was understood that a portion of the Joint Payments were in fact earned by Defendant, and it was understood that the Misallocated Payments were only being sent to Debtor temporarily, until the Service Compensator's records were updated for compensation to be sent directly to Defendant. Therefore, Defendant argues, Debtor did not have an interest in the Transfers.

Trustee argues that the earmarking doctrine does not apply because Debtor had an interest in the Transfers, and certainly acted as though Debtor had control over all the funds in Debtor's various accounts. Trustee further argues that upon Debtor's receipt of the funds from the Service Compensators, a creditor-debtor relationship was created between Debtor and Defendant as contemplated by Section 547(b).

Because the trustee is required to prove that the transfer was of an interest of the debtor in property, the earmarking doctrine restricts the trustee's ability to meet its burden of proof. *In re Libby Intern., Inc.,* 247 B.R. at 467 (citing *Kaler v. Cmty. First Nat'l Bank (In re Heitkamp)*, 137 F.3d 1087,

1089 (8th Cir.1998)). However, the earmarking doctrine is not an affirmative defense. In the Eighth Circuit, for the earmarking doctrine to apply, the following elements must be satisfied:

> (1) There exists an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt;
> (2) The terms are actually performed; and
> (3) The transaction, viewed as a whole, does not result in any diminution of the estate.

*McCuskey v. Nat'l Bank of Waterloo (In re Bohlen Enterprises, Ltd.)*, 859 F.2d 561, 566 (8th Cir.1988). When the net result of the transfer is the substitution of one secured creditor for another, there is no preferential transfer in the Eighth Circuit as there is no effect on the debtor's estate. *Id.* at 564-66; *accord In re Heitkamp*, 137 F.3d at 1089; *see also Krigel v. Sterling Nat'l Bank (In re Ward)*, 230 B.R. 115, 119 (B.A.P. 8th Cir. 1999); *cf. Chase Manhattan Mortg. Corp. v. Shapiro (In re Lee),* 530 F.3d 458, 467-69 (6th Cir. 2008); *but see Bank of America, N.A. v. Mukamai (In re Egidi),* 571 F.3d 1156 (11th Cir. 2009) (No earmarking where debtor used one credit card to pay another). Thus, the earmarking doctrine applies in the Eighth Circuit where a third party provides funds for the specific purpose of paying a selected creditor and the debtor has no actual control over disbursement. *In re Libby Intern., Inc.,* 247 B.R. at 467. Where one creditor is merely substituted for another without any control of the debtor, the element of proof that an interest of the debtor be transferred in order for a preferential transfer to occur cannot be met because the debtor's lack of control means that the bankruptcy estate is not diminished. *Id.* at 466-67; *see also Buckley v. Jeld-Wen, Inc. (In re Interior Wood Products Co.)*, 986 F.2d 228, 231 (8th Cir.1993); *Dubis v. Heritage Bank & Trust Co. (In re Kenosha Liquidation Corp.)*, 158 B.R. 774, 777-78 (Bankr. E.D. Wis. 1993).

Defendant cites two main cases in support of its position that the earmark doctrine should apply, *Ramette v. Digital River, Inc. (In re Graphics Tech., Inc.),* 306 B.R. 630 (B.A.P. 8th Cir. 2004) and *Lyon v. Contech Constr. Prods. (In re Computrex, Inc.),* 403 F.3d 807 (6th Cir. 2005). The Court will address both of these cases in turn.

8

In *In re Graphics Tech., Inc.,* an entity called Paymentech processed credit card sales on behalf of another entity, Tech Squared, Inc. (hereinafter "Tech Squared") pursuant to a credit card processing agreement. *In re Graphics Tech., Inc.,* 306 B.R. at 633. Paymentech held the charged funds in a reserve account for six months to cover chargebacks, and thereafter, forwarded the appropriate amount, less Paymentech's fees, to Tech Squared. *Id.* Without first obtaining Paymentech's approval, Tech Squared and a third entity, Digital River, entered into an agreement whereby all credit card sales of both Tech Squared and Digital River would be processed through Tech Squared's account with Paymentech and, upon Tech Squared's receipt of the funds from Paymentech, Tech Squared would disburse the appropriate amount to Digital River. *Id.* Tech Squared was assumed by another entity, T2Acquisition Corporation (hereinafter "T2Acquisition"), at which time Digital River sought its own agreement directly with Paymentech. *Id.* However, the funds from six-months-worth of Digital River's transactions were still held in Tech Squared's reserve account with Paymentech. *Id.* At the expiration of those six months, Digital River sought disbursement of its portion of the reserve account funds from T2Acquisition. At that time, T2Acquisition already used Digital River's funds for its own operations, therefore Digital River and T2Acquisition entered into a repayment plan. *Id.* at 633-34. After making approximately $100,000.00 in repayments to Digital River during the preference period, T2Acquisition filed a voluntary petition under Chapter 7 of the Bankruptcy Code. *Id.* at 634. The Eighth Circuit Bankruptcy Appellate Panel held that T2Acquisition never obtained legal title to the reserve account funds. *Id.* Citing Section 541(d)[3], the court concluded that there was no evidence that Digital River ever intended to relinquish ownership of the money in the reserve account to T2Acquisition. *Id.* at 634-35. However, the court held that in order for Digital River to circumvent avoidance of the received payments, Digital River would need to "definitively trace its property." *Id.* at 635 (citing *Fore Way Express, Inc. v. Mid-*

---

[3]Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest. . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold. 11 U.S.C. § 541(d) (2009).

*American Lines, Inc. (In re Mid-American Lines, Inc.),* 24 B.R. 52, 53 (Bankr. W.D. Mo. 1982)). "Even when property is commingled, that property must be positively identified, or else the reclaiming party is relegated to the status of a general unsecured creditor, regardless of the equities." *Id.* at 635. The reserve account which held Digital River's funds was completely depleted by T2Acquisition and as such, Digital River was unable to trace its funds. *Id.* at 635-36. The payments made to Digital River during the preference period were therefore preferential transfers. *Id.* at 637.

There is no dispute that a portion of the funds held in Debtor's numerous bank accounts was indeed payable to Defendant. However, Defendant has not submitted evidence which demonstrates that Defendant can clearly trace its funds. First, there are no clear records that the Transfers made directly correlate with any invoice or record which demonstrates that the specific amount paid was due at that time. Rather, the Court is presented with a spreadsheet which shows that the Joint Payments and Misallocated Payments were deposited into one of Debtor's various bank accounts and copies of a series of checks to Defendant from Debtor, which were drawn from one of Debtor's various bank accounts. Defendant is incapable of tracing its portion of the funds in Debtor's various accounts; and, even if Defendant could affirmatively state what amount belonging to Defendant should be in each of Debtor's bank accounts, like the reserve account in *In re Graphics,* Debtor's bank accounts are completely depleted.

Defendant also relies on *In re Computrex, Inc.,* 403 F.3d 807 (6th Cir. 2005) for the proposition that the earmarking doctrine applies in this case. In *In re Computrex,* Computrex was engaged to process and pay Contech's bills and invoices. *Id.* at 809. Computrex sent Contech a weekly accounting of Contech's outstanding debts. *Id.* Contech then sent Computrex an amount sufficient to satisfy Contech's obligations as well as Computrex's fees. *Id.* Computrex began to hold the funds sent by Contech in order to gain maximum interest before dispersing the funds to Contech's creditors. *Id.* Computrex went from a delay of approximately nine days to pay Contech's

creditors to an average of 18 to 21 days. *Id.* Contech was one of several clients serviced by Computrex and Computrex co-mingled the funds it received from its various clients, to the inclusion of Contech. *Id.* Contech's creditors began to complain about late-payment, therefore, consistent with Computrex's practice, the complaining creditors were paid ahead of its clients' other creditors. *Id.* Computrex filed for protection under Chapter 7 of the Bankruptcy Code, and during the preference period, approximately $4.5 million in payments were made to Contech's creditors. *Id.*

The Sixth Circuit held that the payments made to Contech's creditors were not preferential transfers because Computrex was merely a disbursing agent for Contech and thus the funds were not property of the bankruptcy estate. *Id.* at 810. Contech gave Computrex funds for the sole purpose of forwarding the funds to Contech's creditors, pursuant to the contract between Computex and Contech, and the contract did not contemplate or vest control of the funds in Computrex. *Id.* Rather, Computrex was a bailee for Contech, the bailor. *Id.* The Sixth Circuit rejected the trustee's argument that Compturex had control over the funds, and thus the bankruptcy estate had an interest in the funds, because Computrex commingled the funds of its clients, Computrex exercised discretion on how long it would take to pay its clients' creditors and thereafter decided which of its clients' obligations would be paid first. *Id.* at 810-11.

*In re Computrex* is easily distinguishable from the facts of this case. First, there is an identifiable contract between Contech and Computrex which identifies the specific service and the terms of service that Computrex was to perform. Mr. Frenz states that there is a similar contract between Debtor and Defendant, however, in order for *Computrex* to apply, there would need to be privity of contract between Debtor and the Service Compensators. More specifically, the Service Compensators (bailors) would need to have a contract with Debtor (bailee) – via Debtor's agent Western Physicians – to pay Defendant's portion of the Joint Payments as well as the Misallocated Payments to Defendant immediately upon receipt. The facts on the record do not support any such contention. Second, based on the deposit history, there is no correlation between the various sums

11

that Western Physicians indicates were due to Defendant and what was actually paid. Rather, the Joint Payments and Misallocated Payments were sent to Western Physicians on behalf of Debtor, at which point Mr. Frenz determined what portion was due to Defendant, and, based on nothing tangible, a payment in a random amount was made to Defendant using funds in one of Debtor's multiple accounts. Neither *In re Graphics Tech., Inc.,* nor *In re Computrex* apply here. The facts of this case compel the conclusion that the relationship between Debtor and Defendant was a debtor-creditor relationship. When Debtor received the Joint Payments, Defendant's portion was not segregated. So too, the Misallocated Payments were not segregated. Moreover, Debtor did not maintain sufficient funds in its accounts to pay Defendant. Western Physicians did not automatically forward the Misallocated Payments to Defendant; the Misallocated Payments were deposited into one of Debtor's various accounts. And, Debtor used the entirety of the funds in its bank accounts as though Debtor had ownership of those funds. Mr. Frenz decided when and how much Defendant would be paid, as Mr. Frenz did regarding payment to all of Debtor's creditors. Defendant was treated like all other creditors of Debtor during the Preference Period. Further, the fact that Debtor used a third party to manage it's finances has no bearing on whether Debtor had an interest in the funds in Debtor's account, particularly since the those funds were used to Debtor's benefit with Debtor's knowledge.

Moreover, the funds used to pay Defendant did not originate from a 'new creditor'; the net result of the Transfers was not a substitution of one creditor for another as is presupposed in the application of the earmarking doctrine in the Eighth Circuit. *See Bohlen Entersprises, Ltd.,* 859 F.2d at 565. Rather, the net result of payments made by Debtor to Defendant was that there was diminution in the value of Debtor's estate for all of Debtor's creditors. The earmarking doctrine is inapplicable under the facts of this case.

Defendant bore a risk by failing to ensure that the appropriate payment information was in effect with the Service Compensators, and opted to instead place a portion of its receivables in the

control of Debtor. Defendant must now bear the consequence of its business decision. *See also In re Graphics Tech., Inc.,* 306 B.R. at 637 (Digital River must bear responsibility in that it "knowingly consented to have its funds distributed to an account over which it had no control").

Thus, taking all facts in favor of Plaintiff, for the reasons stated above, Defendant is not entitled to summary judgment in its favor. Taking all facts in favor of Defendant, and in consideration of the standard for implementation of the earmarking doctrine in the Eighth Circuit, Plaintiff is entitled to summary judgment. Plaintiff has met his burden and proven that all the requirements of Section 547(b) are met by a preponderance of the evidence. By separate Order, judgment will be entered accordingly.

                                                KATHY A. SURRATT-STATES
                                                United States Bankruptcy Judge

DATED: May 9, 2011
St. Louis, Missouri
LBK

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO 63102

Daniel D. Doyle
Lathrop & Gage LLP
7701 Forsyth Blvd., Ste. 400
St. Louis, MO 63105

Michael A. Brockland
Haar & Woods LLP
1010 Market St., Ste. 1620
St. Louis, MO 63101

A. Thomas Dewoskin
Danna McKitrick, PC
7701 Forsyth, Suite 800
St. Louis, MO 63105

Laura Uberti Hughes
Spencer Fane Britt & Browne LLP
One North Brentwood Blvd.
Ste. 1000
St. Louis, MO 63105

Spencer P. Desai
Desai Law Firm LLC
Pierre Laclede Center
7733 Forsyth Boulevard, Suite 2075
St. Louis, MO 63105